# CASES

## DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE,

OF THE

## STATE OF NEW JERSEY,

### AT SEPTEMBER TERM, 1835.

---

**THE STATE—P. V. COPPUCK, PROSECUTOR, v. WILSON AND OTHERS, CREDITORS.**

Creditors are required by the 3d *Section* of the act concerning estates of persons who die insolvent, *Rev. Laws*, 766, to exhibit to the executor or administrator, under oath or affirmation, their claims against the estate, within the period limited by the order of the court: which period commences running from the date of the order, (unless otherwise directed in said order,) and not from the time of putting up the notices required by the said section.

After the court has granted a rule for time, and exceptions filed are ready to be argued, it is their duty "to proceed and hear the proofs and allegations in the premises," and their refusal to do so, is contrary to the statute, *Section* 6, *Rev. Laws*, 766.

---

This was a *certiorari* directed to the Orphans' Court of the county of Burlington, removing the proceeding and decree of said court, for the distribution of the estate of Thomson N. Sims, among the applying creditors.

The following state of the case was agreed upon.

Thomson N. Sims died on or about the 15th October, 1830,

intestate and insolvent.    Letters of administration of his estate, were granted by the Surrogate, on the 25th of October, 1830, to Joseph C. Coppuck, who at the November term of the Orphans' Court in the same year, made a declaration under oath, of the insufficiency of the estate to pay the debts.    The November term, (1830), of the Burlington County Courts, commenced on Tuesday the 2d, and ended on Saturday the 6th of November. On this last day, the order of the Orphans' Court, was taken for the creditors of the said T. N. Sims, to present their accounts under oath or affirmation, to the administrator, within six months from that time.    This order was printed in the New Jersey Chronicle, printed in Mount Holly, on the 18th of November, and continued therein, for nine weeks—the advertisement in the paper being dated the 6th of November.    Five written copies of the same were put up, to wit, one at Moorestown, on the 23d of November, one at Mount Holly, on the 26th, one at Medford, on the 26th, one at Burlington, on the 27th, and one at Jobstown on the 30th.    The accounts of the administrator, were stated by the Surrogate, and reported to the August Term, 1831, with a list appended, of the claims of all the creditors who had applied, and the dates when their respective accounts were received by the administrator.    At the same term, August 1831, a rule of the same court was granted to Daniel Coppuck and Stacy B. Campion, for thirty days, to file exceptions to the claims of several of the creditors—whose accounts were alleged not to have been handed in within the time prescribed.    The exceptions were filed by them, within thirty days ; but were afterwards, on the 26th of December 1831, at a special term of said court, dismissed by the court, on the ground that they had no authority to grant time by rule ; the act requiring the excep·tions to be filed at the term to which the accounts were reported The court were then moved to hear the argument of counsel on the decree for the distribution of the estate, the hearing of which had been deferred from term to term, and at February Term 1833, the court decreed that the Surrogate should strike a dividend of the proceeds of said estate, among all the applying creditors named in the list appended to the administrator's account, who had exhibited their accounts under oath or affir-

Coppuck *v.* Wilson and others.

mation; which decree of distribution, was taken without argument, and by consent of parties, in order that the several points in controversy, might be brought before the Supreme Court. Creditors, whose accounts are numbered from 1 to 23 inclusive —and No. 38, are the party plaintiffs in *certiorari*, and the remainder are defendants. And it is the agreement and desire of the parties in *certiorari*, that if the Supreme Court shall be of opinion that the decree of distribution should be reversed, they should, in their opinion, designate which of the claims should have been admitted, and which excluded by the decree of distribution, of the Orphans' Court of February Term, 1833."

*Brainard Clark*, for plaintiff in *certiorari*.

*James Wilson* and *John R. Slack*, for creditors.

HORNBLOWER, C. J. The state of the case agreed upon by the parties, presents a question, upon the construction of the 3d *Section* of the act concerning the estates of persons who die insolvent. *Rev. Laws*, 766.

By this section, when an estate has been represented by an executor or administrator, to be insolvent, in the manner therein specified, the court are to " direct the executor or administrator to give public notice to the creditors of the estate, to exhibit to such executor or administrator, *under oath or affirmation*, their claims and demands against the estate, within such time, as the court shall direct and appoint, *not exceeding eighteen months, nor less than six months*, by setting up such *notice*, in five of the most public places in the county, for the space of two months, and also for advertising the same, *for the like period*, in one or more newspapers, &c.

The administrator of Thomson N. Sims, having represented his estate to be insolvent, in the manner prescribed by the act, the Orphans' Court of Burlington county on the 6th day of November, in the term of November 1830, made an order, that the administrator should give notice to the creditors of the intestate, to exhibit under oath or affirmation, to the said administrator, their claims and demands against the estate of the intestate, *within six months of that time*, by setting up notices, etc. as in said act, is directed. A copy of this order

was published in the newspaper, on the 18th of the same month, which was its first insertion, and continued therein, for nine weeks—and five written copies of the order, were set up, in proper places, one on the 23d, two on the 26th, one on the 27th, and one on the 30th, of the same month of November aforesaid.

The claims and demands of some of the creditors, were not exhibited to the administrator, under oath or affirmation, within six months from the 6th of November, the date of the order, but were so exhibited, within six lunar months, from the 30th of November 1830, the day on which the last notice was set up. At the August term of 1831, the Surrogate stated and reported the accounts of the administrator, with a list of *all* the claims put in, including those just mentioned, and showing the periods, when the several claims had been respectively exhibited. Thereupon a rule was granted by the court, on motion of the plaintiffs in *certiorari*, (they being creditors, and having exhibited their claims in due form of law, within six months from the date of the order,) for leave to file exceptions to some of the claims put in by other persons. Exceptions were filed accordingly; but at a special term in December 1831, the court dismissed the exceptions, without hearing them, on the ground that they ought to have been filed at the August term, and that the court had no right to allow the exceptants, thirty days or any adjourned period, within which to file them. Afterwards, in February term 1833, the court decreed a distribution among all the creditors, including those, who had not presented their claims, within six months from the date of the order just mentioned.

The prosecutors of this *certiorari*, are of the class of creditors who exhibited their claims within the limited period; and therefore insist upon a distribution among themselves, to the exclusion of the others.

It is admitted by the counsel for the defendants, that if the decree of distribution, includes creditors whose claims were not presented in due time, it is erroneous, according to the decision of this court, in *Vandyke et. al.* v. *Chandler*, 5 *Halst. R.* 49. But they insist, that by a just construction of the act, the time limited by the court, whether it be six or eighteen

months, or any intermediate period, does not commence running, until notice has been given to the creditors, in the manner directed by the act; and that such notice is not given, until two months have expired from the time the notice was *published* and *put up* in five places, the act requiring two months notice to be given to the creditors, before it excludes them: or, if notice may be considered as given from the time of publishing and putting up copies of the order, the time must be reckoned, from the day when the last copy was put up; for until then, the *notice* required by the act is not complete; and they further insist, that if such be the just construction of the act, such must be deemed and taken to be the meaning and intention of the order of the court, limiting creditors, although, in terms, it may appear to allow them, but six months, from the time of *making the order*.

However wise it might have been in the legislature, thus to have restricted the court, by inserting in the 3d Section of the act, after the words " six months," the words " *after such notice has been given for two months.*"   Or however prudent it would be in the Orphan's Court, to specify the time within which, the order should be published and put up, and to allow the creditors six months or more, after it had been so published and put up, we cannot in effect, insert any such clause in the act, by adopting either construction contended for by the defendant's counsel.   By the terms of the statute, the court are to direct the executors or administrators to give notice to the creditors to exhibit their claims within such time, as the court shall direct, and appoint a time not exceeding eighteen or less than six months; and then it prescribes the manner of giving notice; leaving it to the court however, to direct a further notice if they think proper.

Now the statute does not, in terms, fix the period when the six or eighteen months, or other limited time, shall commence running; but by very plain, if not necessary construction, it is to begin from the time of making the order, unless some other time is fixed for that purpose; and so is the order in this case.

I am therefore of opinion, the decree in this case is erroneous, and ought to be set aside: and that the funds in the hands of

the administrator after deducting the amount of preferred debts, and the expenses, ought to be distributed *pro rata*, to and among those creditors exclusively, who exhibited their claims, under oath or affirmation, within six months from the date of the order.

This renders it unnecessary to decide the only other controverted point in this case—to wit, whether the court did not err, in dismissing the exceptions filed by the plaintiffs, to the claims of the other creditors? For I understand from the state of the case, the only ground of exception, was the failure to exhibit those claims in due time and manner.

But if the court dismissed those exceptions, upon the ground, that they had inadvertantly and without lawful authority, given the exceptants time to file them, I am clearly of opinion that the court committed an error in doing so. The 6th Section of the act says, " It shall and may be lawful for any creditor or other person interested, by himself, or attorney, to appear at the said term," (that is the term to which the executors or administrators shall report the claims and demands,) " and file exceptions," &c.—and afterwards, the court are authorized, " at the same or any subsequent term," as may be expedient, to hear and determine the exceptions. Now if the party appears, by himself or attorney, at the term, and takes exception to any of the accounts, he is entitled to be heard, and it would be most unreasonable to deny to him, a proper time to examine into the transactions and documents, and specify the grounds of his exceptions in writing, so that the court and all concerned may understand them, and that they may be intelligently heard and disposed of. When a rule is granted for leave to file exceptions in thirty days, or any other period, they are to be considered as put in, when the exception is taken. The power of granting such a rule, is incident to the court, and to deny it to them, would be to suppose the legislature intended to mock the party with a show of justice, and yet deny to him the means of obtaining it. In the absence of any restrictive words in the statute, I cannot yield to such a construction.

FORD, J. This *certiorari* is brought on a decree of the Orphan's Court, of the county of Burlington, ordering a ratable

Coppuck *v.* Wilson and others.

distribution of the estate of an intestate, among the creditors thereof, some of whom it is alleged, had not presented their claims to the administrator, within the time limited for that purpose, by order of court. An order had been made on the 6th of November 1830, directing all claims to be presented to the administrator, within six months from the date thereof, which clearly meant six lunar months of twenty-eight day's each, and therefore expired on the 23d day of April 1831. It is admitted, that some of the claims admitted to dividend, had not been exhibited till after that time. Now the 11th *Section* of the act, *Rev. Laws,* 768, plainly enacts, " that if any creditor shall not exhibit his claim to the administrator, *within the time limited and prescribed by the court,* such creditor shall be forever *barred,*" &c. The error in receiving claims thus clearly barred, was therefore a fatal one, for which, the decree must be reversed, and the proceedings be remitted to the Orphan's Court, that they may decree distribution of the estate according to law.

But it is alleged, that the order, limiting a certain time for the exhibition of demands, had not been duly advertised, as the statute directs it to be done; and if this be so, then the order itself is lost, so that no dividend can be lawfully decreed under it, and all the proceedings must be set aside; in consequence of which, the administrator would have to apply for a new order.

The 3d Section requires the administrator " to give public notice" of the time so limited, " by setting up such notices in five of the most public places in the county, for the space of two months." This means that he shall *set them up;* but it is agreed on both sides, not to mean that he shall *keep them up* day and night, for the space of two months; such being no part of his duty, nor is proof of their having been so kept up, even required by the court. To " set up notice," means " to give notice;" both phrases are found in this section, and they mean the same thing. And to give notice " for the space of two months," is not susceptible of any other meaning, than two months before the expiration of the limited time, which was actually done.

The defendants insist on a different meaning; that notice

VOL. III.—6

Coppuck *v.* Wilson and others.

shall be set up on the same day that the order shall have been made. Now this would be giving notice for the space of *six* months, and the defendants contend that they were entitled to it for that length of time; but I think otherwise, for many reasons. If a statute, for instance, should require a party to give notice of trial for the space of two months, it could not possibly mean for six months, because they are different periods of time. Furthermore, if the statute meant that notice should be set up the day the order was made, it must mean that notice should be given for *six* months, and then the words "for *two months*," would have no meaning. Giving notice on the day of making the order, " for two months," would really be giving it for six, and the section would thus be made to contradict itself, in respect to time, inasmuch as two months can never be six. " Notice for two months before the expiration of the limited time," is intelligible, whereas, " notice on the day of making the order, for two months," is a phrase that makes nonsense of " for two months," unless they mean that the notice shall be *kept up* for two months, which cannot be admitted, and is not pretended.

The statute could have directed the order to be published on the day it was made, but notice of it for two months was deemed to be sufficient, and why is it not? Real estate may be sold upon two months' notice, *Rev. Laws*, 432, *Section* 9. Widows, orphans and creditors, have only two months' notice, that the accounts of executors and administrators, will be closed in the Orphans' Court, *Rev. Laws*, 786, *Section* 30; and why should creditors have a longer notice to present their demands? They are bound to look after their debtors, and the estates of their debtors, by the common law, without any notice whatever, or they will be precluded by those who are more diligent. Notice is a gratuity introduced by the statute, and if two months be reasonable time, after which, widows and orphans, and creditors, shall be precluded in one case, why should it not be in another?

It is impracticable for an administrator to give all these notices on the very day that the order is made; such a requirement would defeat nearly all these decrees. The order must be obtained in court, notices of it drawn and set up in five

different places in a county, and publication be actually made of it in a newspaper, all on the same day. If the newspaper did not happen to be published on that day, the order would fail. Printers demand advertisements to be delivered at the press, the day before publication, which would be a day before the order had existence. It is said that these difficulties would be obviated by making a slight alteration in the form of the order; but the alteration is not suggested, nor is it easy to devise it. It must be an order to-day, that an order shall be made to-morrow or next week, in order to give time for publication. If two such anomalous orders should ever appear on the records of the court, a question might still arise, which of the two was the real order. It appears that publication for two months before the expiration of the time limited, is all that the statute intended to require of the administrator, and that such claims as were not presented till after the time had elapsed, could not lawfully be admitted to share in the estate reported to the court.

But no just and equitable distribution could be made among creditors, without a fair investigation of the accounts of the administrator, and of the demands of persons pretending to be creditors, when perhaps nothing might be due to them. He must have a reasonable time to do it, in this as in all other cases ; for being no party to the accounts or demands, but a perfect stranger, and deeply interested in them, the right of investigation would be worthless, if a reasonable time for the exercise of it were denied to him. The statute says—" it shall be lawful for any person interested to *appear at the said term*, and file exceptions." It says he must appear at the term ; it does not say he must file exceptions at the term ; therefore the court has a discretion to allow him such reasonable time, as the circumstances of the case, in their opinion may require. If the court has any reasonable suspicion that his exceptions are only frivolous and for delay, and he does not disclose them, by affidavit or otherwise, to the satisfaction of the court, it may, in its discretion, refuse him time, and then he will be limited to the term. This discretion is not only common to all tribunals, but so necessary to attain the ends of common justice, that the court ought not to be deprived of it by construction, where it is not taken away,

and could not have been intended to be. After the court had granted a rule for time, and the exceptions filed were ready to be argued; it was their duty, " to proceed and hear the proofs and allegations in the premises "——and their refusal to do so, was contrary to the statute. No distributions can be made till these exceptions shall have been heard. The order limiting a time for creditors, has been duly advertised and published, but the documents must be remitted to the Orphans' Court, that they may proceed to hear the exceptions, and decree distribution under that order, according to law.

RYERSON, J. concurred.

*Decree set aside.*

CITED in *Gould* v. *Tingley*, 1 *C. E. Gr.* 503.